IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KILEY WOLFE, | : | |
| | : | |
| Plaintiff | : | CIVIL ACTION NO.  07-0348 |
| | : | |
| v. | : | |
| | : | |
| MCNEIL-PPC INC.; MCNEIL | : | |
| CONSUMER & SPECIALTY | : | |
| PHARMACEUTICALS, a division of | : | |
| MCNEIL-PPC, INC.; MCNEIL | : | |
| CONSUMER HEALTHCARE, a division | : | |
| of MCNEIL-PPC, INC.; JOHNSON & | : | |
| JOHNSON, INC.; and JOHNSON & | : | |
| JOHNSON PHARMACEUTICAL | : | |
| RESEARCH AND DEVELOPMENT, LLC | : | |
| | : | |
| Defendants | : | |

## COMPLAINT AND JURY DEMAND

AND NOW COMES, Plaintiff,  Kiley Wolfe, by and through her undersigned attorneys, files

this Complaint against Defendants, McNeil-PPC, Inc., McNeil Consumer & Specialty

Pharmaceuticals, a division of McNeil-PPC, Inc., McNeil Consumer Healthcare, a division of

McNeil-PPC, Inc., Johnson & Johnson, Inc., and Johnson & Johnson Pharmaceutical Research

and Development, LLC and avers in support thereof the following:

## I.    PARTIES

1.    Plaintiff, Kiley Wolfe, is an adult individual and currently a citizen and resident of the

state of Louisiana, residing at 710 East Boyd Street, Apartment 308, Baton Rouge, LA

70808.

2.    Plaintiff's date of birth is February 6, 1987 and she reached the age of majority on

February 6, 2005, at which time the statute of limitations for filing this lawsuit began to

run.  Plaintiff was at all times material hereto and relevant to defendants' negligence described in this complaint a minor under the custody and control of her mother, Janet Leland, and father, William Wolfe.  The plaintiff's residence at all times material hereto regarding the operative facts alleged in this complaint was 866 Washington Street, Bath, ME, 04530.

3.      Defendant McNeil-PPC, Inc. (hereinafter "McNeil-PPC") is, upon information and belief, a corporation organized and existing under the laws of the state of New Jersey, and its principal place of business is 7050 Camp Hill Road, Fort Washington, PA 19034-2210.

4.      Defendant McNeil Consumer & Specialty Pharmaceuticals, a division of McNeil PPC, Inc. (hereinafter "McNeil-CSP") is, upon information and belief, a corporation organized under the laws of the state of New Jersey, and its principal place of business is 7050 Camp Hill Road, Fort Washington, PA 19034-2210.

5.      Defendant McNeil Consumer Healthcare, a division of McNeil PPC, Inc. (hereinafter "McNeil-CH") is, upon information and belief, a corporation organized under the laws of the state of New Jersey, and its principal place of business is 7050 Camp Hill Road, Fort Washington, PA 19034-2210.

6.      Defendant Johnson & Johnson, Inc. (hereinafter "J & J") is, upon information and belief, a corporation organized under the laws of the state of New Jersey, and its principal place of business is One Johnson and Johnson Plaza, New Brunswick, NJ 08933-0001.

7.      Defendant Johnson & Johnson Pharmaceutical Research and Development, LLC (hereinafter "J & J Pharmaceutical R/D") is, upon information and belief, a corporation

-2-

organized under the laws of the state of New Jersey, and its principal place of business is 665 Stockton Drive, Exton, PA 19477-0779.

8.    Defendant J & J is, upon information and belief, the parent company of McNeil-PPC, McNeil-CSP, and McNeil-CH (hereinafter referred to collectively as the "McNeil defendants"), and J & J Pharmaceutical R/D, and these defendants operate under the umbrella of "Johnson & Johnson Family of Companies."  In 1959, J & J acquired McNeil Laboratories and merged it with a J & J company Personal Products Corporation and changed that company's name to McNeil-PPC, Inc.  McNeil-PPC has four divisions, one of which is defendant McNeil-CSP, which designs, tests, manufactures, markets, and sells Children's Motrin along with J & J Pharmaceutical R/D.

## II.    JURISDICTION AND VENUE

9.    This Court has jurisdiction based upon diversity of citizenship between the parties and the amount in controversy exceeds $75,000.00, exclusive of interests and costs, pursuant to 28 U.S.C. §1332.

10.    Plaintiff is a resident of Louisiana.  The McNeil and J & J Pharmaceutical R/D defendants' have principal places of business in Pennsylvania and are organized under the laws of New Jersey.  Accordingly, the McNeil and J & J Pharmaceutical R/D defendants are citizens of both Pennsylvania and New Jersey. Defendant J & J is a citizen of New Jersey as it is organized in New Jersey and its principal place of business is in New Jersey.

11.    Venue is appropriate in the Eastern District of Pennsylvania because the McNeil and J & J Pharmaceutical R/D defendants have principal places of business in this district and all

of the defendants are authorized to do and are doing business in this district and have, at all times material hereto, marketed and sold their products, including Children's Motrin, in Pennsylvania and, specifically, in this district.

## III.   FACTUAL AVERMENTS

12.   The McNeil and J & J Pharmaceutical R/D defendants are wholly owned subsidiaries of defendant J & J, and, at all times material hereto, all defendants, and/or any combination of them, and/or any one of them individually, were in the business of designing, testing, manufacturing, taking to market, marketing, promoting, selling, and/or distributing, prior to 1995, a prescription drug and, during and/or after 1995, an over-the-counter non-steroidal anti-inflammatory analgesic (NSAID) drug called Children's Motrin, generic name ibuprofen.

13.   The McNeil and J & J Pharmaceutical R/D defendants are primarily responsible for designing, testing, manufacturing, taking to market, marketing, promoting, selling, and/or distributing Children's Motrin, under the direction and control of defendant J & J.

14.   The McNeil and J & J Pharmaceutical R/D defendants are in the business of designing, testing, manufacturing, taking to market, marketing, promoting, selling, and/or distributing the prescription drug, Children's Motrin, prior to 1995, and the over-the-counter Children's Motrin during and/or after 1995, directly to the medical community, healthcare providers and/or consumers, including the Plaintiff while she was a minor residing in Bath Maine, through various retailers, including but not limited to supermarkets, grocery stores, and pharmacies.

15.   Between 1989 and 1995, the Defendants' package inserts for Children's Motrin, the drug

-4-

information on the box or packaging, and/or the information in the Physicians' Desk

Reference ("PDR") listed erythema multiforme ("EM"), stevens-johnson syndrome

("SJS"), toxic epidermal necrolysis ("TEN") in the possible adverse reactions and

warnings sections.

16.    In 1995 or the beginning of 1996, the Defendants desired, requested and/or had

Children's Motrin down classified from prescription to over-the-counter, and changed the

adverse reactions and warnings section of the drug to remove EM, SJS, and/or TEN from

the label and/or warnings sections on the box or packaging, the package insert, and/or in

the PDR.

17.    At all times material hereto, defendants intended that Children's Motrin reach the

consumers, including the plaintiff, in the condition in which it was originally sold and

distributed by them.

18.    At all times material hereto, the defendants put Children's Motrin into the stream of

commerce without any alteration or modification of the drug by any distributer or

retailer.

19.    At all times material hereto, the defendants designed, tested, took to market,

manufactured, marketed, promoted, sold, and distributed Children's Motrin to consumers

throughout the United States, including the plaintiff.

20.    Defendants knew, or should have known if they had exercised reasonable care, that

Children's Motrin was unsafe and/or unreasonably dangerous to certain individuals,

including the plaintiff, but withheld such information from the medical community,

healthcare providers, and/or consumers, including the plaintiff, and/or failed to warn

certain groups, including but not limited to medical community, health care providers, and/or consumers, including the plaintiff, while at the same time providing false assurances of the drug's safety to the medical community,  healthcare providers, including plaintiff's pediatrician, and/or to consumers, including the plaintiff.

21.     On or about May 27, 1996, plaintiff developed a headache, stomach pains, and a fever.

22.     On or about May 28, 1996, plaintiff was taken to her pediatrician and was diagnosed  as suffering from a virus for which plaintiff's pediatrician prescribed Children's Motrin to relieve her symptoms.

23.     Plaintiff had never taken Children's Motrin before this date.

24.     Over the next day or so, plaintiff continued to have a fever and developed a rash on her face.

25.     On or about May 30, 1996, plaintiff's pediatrician, re-examined her and concluded that her symptoms were still indicative of a virus and continued prescribing Children's Motrin.

26.     On or about June 1, 1996, the plaintiff developed hundreds of tiny blisters on her face, ears, and down her throat, and was feeling extremely lethargic.

27.     Upon information and belief, Children's Motrin had no warnings at that time about what to do in case of a rash or blistering as exhibited by Plaintiff.

28.     The plaintiff was taken to Boston Children's Hospital by her mother and because of the rash and blistering was placed in isolation.

29.     The doctors at Boston Children's Hospital diagnosed the plaintiff with SJS.

30.     Immediately after, and directly as a result of, developing SJS, plaintiff developed Acute

Vanishing Bile Duct Syndrome (hereinafter "VBDS").

31.   Despite being properly treated, plaintiff's cholestatic disease reached such a degree that she was forced to undergo a liver transplant.

32.   Plaintiff also suffered, as a result of her SJS and VBDS, a collapsed heptatic artery and subsequent heptatic artery transplant and burning of her corneas.

33.   Because plaintiff's condition continues to deteriorate, she is currently on the waiting list for a second liver transplant.

34.   Neither plaintiff nor her parents had any knowledge of any, or reasons to believe, of the potential dangers, particularly EM, SJS, TEN, or VBDS, and/or other severe or life-threatening skin or other adverse reactions associated with taking Children's Motrin.

35.   Upon information and belief, plaintiff's pediatrician had no knowledge of the potential dangers, particularly EM, SJS, TEN, or VBDS, and/or other severe or life-threatening skin or other adverse reactions associated with taking Children's Motrin.

36.   Defendants failed to warn the consumers, including the plaintiff, in any of the materials associated with the Children's Motrin such as the package insert, the label on the box or packaging, and/or in any of their advertisements for the drug, that the drug could cause EM, SJS, TEN, VBDS, and/or mucosal or dermalogical lesions or sores.

37.   Defendants failed to warn the medical community and/or healthcare providers, specifically plaintiff's pediatrician, in any of the materials associated with the Children's Motrin such as the package insert, the label on the box or packaging, in any of their advertisements for the drug, and/or in the PDR that the drug could cause EM, SJS, TEN, VBDS, and/or mucosal or dermalogical lesions or sores, which prevented plaintiff's

pediatrician from immediately diagnosing and treating plaintiff before all of the damage alleged in this complaint occurred.

38.     Defendants failed to properly test Children's Motrin before it was down classified from prescription to over-the-counter in 1995.

39.     Defendants failed to fully and/or accurately report to certain groups, including but not limited to the medical community, healthcare providers, and/or consumers, including the plaintiff, numerous instances of EM, SJS, TEN, or VBDS, and/or other severe or life-threatening skin or other adverse reactions which occurred during its study of Children's Motrin used to support, validate, and/or justify the down classification of the drug from prescription to over-the-counter.

40.     At all times material hereto, plaintiff ingested Children's Motrin in accordance with the product label, the packaging material, and/or the box or packaging in treatment of her fever, all at the direction of her pediatrician.

41.     As a direct and proximate result of ingesting Children's Motrin, plaintiff developed SJS resulting in blisters on her face, ears, and down her throat, and burning of her corneas, and VBDS resulting in liver failure and leading to a liver transplant, collapse of her heptatic artery and transplant of this artery.  In addition, plaintiff is on the waiting list for a second liver transplant.

42.     As a direct and proximate result of the defendants' negligence, carelessness, and/or recklessness described in this complaint, plaintiff suffered severe physical and psychological pain and suffering, inconvenience, and the loss of life's pleasures and enjoyment.

43.     As a direct and proximate result of the defendants' negligence, carelessness, and/or recklessness described in this complaint, plaintiff suffered a loss of earnings and earning capacity, to her great financial detriment and loss.

44.     As a direct and proximate result of the defendants' negligence, carelessness, and/or recklessness described in this complaint, plaintiff has incurred and will continue in the future to incur medical bills for medical treatment in an attempt to effect a cure for her injuries.

**IV.     CAUSES OF ACTION AGAINST ALL DEFENDANTS**

**Count I- Negligence**

**Plaintiff  v. Defendants**

45.     Plaintiff incorporates each and every allegation above as if set forth at length herein.

46.     Defendants had a duty to use reasonable care in designing, manufacturing, testing, labeling, packaging, taking to market, marketing, promoting, selling, advertising, warning, and/or distributing the drug.

47.     Defendants' breached their duties to the plaintiff as set forth below.

48.     Defendants knew, or should have known if they had exercised reasonable care, that Children's Motrin was of such a nature that if not properly manufactured, labeled, tested, and/or inspected before sold, the product would likely cause harm to the product user, including the plaintiff.

49.     Defendants knew, or should have known if they had exercised reasonable care, that Children's Motrin caused unreasonably dangerous side effects including, but not limited

to EM, SJS, TEN,  VBDS, and/or other severe or life-threatening skin or other adverse

reactions associated with taking Children's Motrin.

50.     Despite this knowledge, defendants continued to promote, market, distribute, and sell

Children's Motrin to the medical community, healthcare providers, and/or consumers,

including the plaintiff and her pediatrician, without warning of these side effects.

51.     Defendants knew, or should have known if they had exercised reasonable care, that

consumers, including the plaintiff, would suffer a foreseeable injury as a consequence of

the defendants' failure to exercise its due care in its manufacturing, testing, labeling,

packaging, marketing, promoting, selling, advertising, warning, and/or distributing the

drug.

52.     At all times material hereto, Defendants failed to warn certain groups, including but not

limited to the medical community, healthcare providers, and/or consumers, including the

plaintiff, to stop the drug immediately and seek medical attention if any skin rash,

blistering, and/or mucosal lesions developed and warn of the danger that such symptoms

could progress to EM, SJS, TEN, or cause VBDS.

53.     Defendants failed to warn and/or report to certain groups, including but not limited to the

medical community, healthcare providers, and/or consumers, including the plaintiff, that

during its testing of Children's Motrin there were numerous instances of severe adverse

skin or other adverse reactions to the drug, including, but not limited to EM, SJS, TEN,

and/or VBDS.

54.     As a direct and proximate result of the defendants' negligence, carelessness, and/or

recklessness described in this complaint, plaintiff suffered damages as set forth in

paragraphs 41 through 44 above.

WHEREFORE, plaintiff demands judgment against all defendants, jointly and/or severally, which will fairly compensate her in accordance with the laws of this jurisdiction.

## Count II- Strict Liability 402A

## Plaintiff v. Defendants

55.   Plaintiff incorporates each and every allegation above as if set forth at length herein.

56.   Defendants are strictly liable for the injuries and damages suffered by the plaintiff as a consequence of the defect in the drug, Children's Motrin, pursuant to the provisions of the Restatement Second of Torts §402A and the applicable law.

57.   Children's Motrin was defectively designed, manufactured, tested, promoted, advertised, labeled, marketed, distributed, and/or sold by the defendants so as to render it unreasonably dangerous to plaintiff and others similarly situated.

58.   Children's Motrin contained chemical ingredients which made it more toxic and/or more likely to cause adverse reactions than other NSAIDs or fever reducing products.

59.   Defendants failed to adequately test Children's Motrin for prescription drug usage with children before marketing, promoting, selling and/or distributing it to the medical community, healthcare providers, and/or consumers, including the plaintiff.

60.   Defendants also failed to adequately test Children's Motrin for down classification from prescription to over-the-counter use with children before marketing, promoting, selling, and/or distributing it to the medical community, healthcare providers, and/or consumers, including the plaintiff.

61.   Defendants also failed to completely, adequately, and/or accurately report the clinical

trial data regarding Children's Motrin to certain groups, including but not limited to the

medical community, healthcare providers, and/or consumers, including the plaintiff,

either before, during, and/or after their application for prescription usage, and/or before,

during, and/or after their application for over-the-counter usage.

62. The warnings and instructions that accompanied Children's Motrin provided inadequate

warnings to certain groups, including but not limited to the medical community,

healthcare providers, and/or consumers, including the plaintiff, about the risks of EM,

SJS, TEN, VBDS, and/or other severe or life-threatening skin or other adverse reactions

associated with taking Children's Motrin, or what to do in the event the patient suffered

an adverse skin reaction to the drug and/or any other adverse reaction to the drug.

63. At all times material hereto, Defendants' failures to warn included, but were not limited

to, the failure to warn that if a rash or muscosal reaction developed, that Children's

Motrin should be stopped immediately and medical care should be sought.  Defendants

also failed to warn that there was a greater risk of severe adverse reactions, such as EM,

SJS, TEN, and/or VBDS, in females. These marketing defects were some of the

producing cause of the plaintiff's permanent injuries and damages.

64. A safer alternative design and/or appropriate warnings would have prevented or

significantly reduced the risk of plaintiff's injuries, without substantially impairing the

drug's utility.  A safer alternative design and/or appropriate warnings were economically

and technologically feasible at all times material hereto.

65. As a direct and proximate result of the defendants' negligence, carelessness, and/or

recklessness described in this complaint, plaintiff suffered damages as set forth in

paragraphs 41 through 44 above.

WHEREFORE, plaintiff demands judgment against all defendants, jointly and/or severally, which will fairly compensate her in accordance with the laws of this jurisdiction.

## Count III- Strict Liability 402B

## Plaintiff v. Defendants

66.  Plaintiff incorporates each and every allegation above as if set forth at length herein.

67.  Defendants are strictly liable for the injuries and damages suffered by the plaintiff as a result of the misrepresentations by the defendants in selling Children's Motrin pursuant to the provisions of the Restatement Second of Torts §402B and the applicable law.

68.  Children's Motrin was defectively advertised, labeled, marketed, distributed, and/or sold by the defendants so as to render it unreasonably dangerous to plaintiff and others similarly situated.

69.  At all times material hereto, Defendants misrepresented the safety and efficacy of Children's Motrin in its advertising, packaging, and/or other literature associated with this product, which consumers, specifically the plaintiff, relied on in purchasing and ingesting the drug to alleviate the symptoms the drug was designed and advertised to treat, including, but not limited to aches, pains, and fevers.

70.  The warnings and instructions that accompanied Children's Motrin provided inadequate warnings to certain groups, including but not limited to the medical community, healthcare providers, and/or consumers, including the plaintiff, about the risks of EM, SJS, TEN, VBDS, and/or other severe or life-threatening skin or other adverse reactions associated with taking Children's Motrin, or what to do in the event the patient suffered

an adverse skin reaction to the drug and/or any other adverse reaction to the drug.

71.   Defendants' failures to warn included, but were not limited to, the failure to warn that if a rash, blistering, and/or a muscosal reaction developed, that Children's Motrin should be stopped immediately and medical care should be sought.  Defendants also failed to warn that there was a greater risk of severe adverse reactions, such as EM, SJS, TEN, and/or VBDS, in females. These marketing defects were some of the producing cause of the plaintiff's permanent injuries and damages.

72.   A safer alternative design and/or appropriate warnings would have prevented or significantly reduced the risk of plaintiff's injuries, without substantially impairing the drug's utility.  A safer alternative design and/or appropriate warnings were economically and technologically feasible at all times material hereto.

73.   As a direct and proximate result of the defendants' negligence, carelessness, and/or recklessness described in this complaint, plaintiff suffered damages as set forth in paragraphs 41 through 44 above.

WHEREFORE, plaintiff demands judgment against all defendants, jointly and/or severally, which will fairly compensate her in accordance with the laws of this jurisdiction.

### Count IV- Breach of Express Warranty

### Plaintiff v. Defendants

74.   Plaintiff incorporates each and every allegation above as if set forth at length herein.

75.   Defendants developed, tested, manufactured, sold, distributed, marketed, and/or promoted Children's Motrin which was ingested by plaintiff and this drug was expected to and did reach the plaintiff without substantial change in its condition.

-14-

76.     Defendants made express warranties as to the drug's utility in treating fever and pain symptoms/conditions, without making clear and/or warning of the extreme danger associated with a severe reaction to this drug, including EM, SJS, TEN, and/or VBDS.

77.     The express warranties described were part of the basis of the bargain between the plaintiff and defendants.

78.     Defendants breached this express warranty because they failed to warn certain groups, including but not limited to the medical community, healthcare providers, and/or consumers, including the plaintiff, that Children's Motrin was not of the quality or condition expressly warranted and was defective in that Children's Motrin is inherently dangerous to children, particularly females, and therefore cannot be used in the manner intended without serious risk of physical injury to the user.

79.     Plaintiff justifiably and to her great detriment relied upon the defendants' warranties and representations for the purpose, ingestion, and use of Children's Motrin.

80.     As a direct and proximate result of the defendants' negligence, carelessness, and/or recklessness described in this complaint, plaintiff suffered damages as set forth in paragraphs 41 through 44 above.

        WHEREFORE, plaintiff demands judgment against all defendants, jointly and/or severally, which will fairly compensate her in accordance with the laws of this jurisdiction.

## Count V- Breach of Implied Warranty of Merchantability

### Plaintiff v. Defendants

81.   Plaintiff incorporates each and every allegation above as if set forth at length herein.


82.   Defendants developed, tested, manufactured, sold, distributed, marketed, and/or

promoted Children's Motrin which was ingested by plaintiff and this drug was expected

to and did reach the plaintiff without substantial change in its condition.

83.   Defendants developed, tested, manufactured, sold, distributed, supplied, marketed, and/or

promoted Children's Motrin and  impliedly warranted to the public generally and

specifically to the plaintiff that Children's Motrin was of merchantable quality and was

safe and fit for the purpose intended when used under ordinary circumstances and in an

ordinary manner.

84.   Defendants knew, should have known, or had reason to know of the purposes for which

plaintiff purchased the drug; that plaintiff was relying on defendants' skill and judgment

to select and furnish a suitable drug; and that the drug in question was unfit for the

purpose for which is was intended to be used.

85.   Defendants breached these warranties to the consumers and the public in general, the

plaintiff in particular, and healthcare providers and plaintiff's pediatrician in particular, in

that Children's Motrin was not of merchantable quality, was not fit for its intended and

reasonably foreseeable purpose, and was unreasonably dangerous in light of the risks of

the side effects and potential adverse effects, EM, SJS, TEN, VBDS, and/or other severe

or life-threatening skin or other adverse reaction to the drug to the foreseeable users, such

-16-

as the plaintiff, without appropriate warnings and cautions of adverse effects being given to the general public or healthcare providers.

86.     Defendants failed to provide adequate warnings for Children's Motrin of these adverse side effects thereby rendering the product unreasonably dangerous and unfit for its intended use and purpose in breach of this warranty.

87.     Plaintiff justifiably and to her great detriment relied upon the defendants' warranties and representations for the purpose, ingestion, and use of Children's Motrin.

88.     As a direct and proximate result of the defendants' negligence, carelessness, and/or recklessness described in this complaint, plaintiff suffered damages as set forth in paragraphs 41 through 44 above.

WHEREFORE, plaintiff demands judgment against all defendants, jointly and/or severally, which will fairly compensate her in accordance with the laws of this jurisdiction.

## Count VI- Violation of Consumer Protection Law

### Plaintiff v. Defendants

89.     Plaintiff incorporates each and every allegation above as if set forth at length herein.

90.     The plaintiff's parents purchased and the plaintiff ingested Children's Motrin for her personal use and thereby suffered an ascertainable loss as a result of the acts and/or omissions of the defendants in violation of the consumer protection law.

91.     Defendants knowingly and/or intentionally designed, manufactured, tested, promoted, advertised, marketed, distributed, and/or sold Children's Motrin as a merchantable, safe, and efficient standard and quality, when it was not.

92.     Defendants knowingly and/or intentionally failed to honor a warranty or a particular
        warranty terms as set forth in counts IV and V above.

93.     The defendants in their advertising, promotion, marketing, distribution, and sale of
        Children's Motrin violated the consumer protection laws through their use of false and/or
        misleading representations, misrepresentations, and/or omissions of material facts
        regarding the safety and efficacy of Children's Motrin to certain groups, including but
        not limited to the medical community, healthcare providers, and/or consumers, including
        the plaintiff.

94.     Defendants knowingly, intentionally and/or recklessly failed to include adequate
        warnings of the adverse effects of Children's Motrin as set forth in this Complaint.

95.     The defendants' acts and/or omissions as described in this complaint were
        unconscionable acts and practices under the applicable consumer protection law.

96.     Each and all of the defendants' foregoing acts and/or omissions, acting separately and/or
        collectively, were a proximate cause of the plaintiff's injuries as described in paragraphs
        41 through 44 above.

        WHEREFORE, plaintiff demands judgment against all defendants, jointly and severally,
which will fairly compensate her in accordance with the laws of this jurisdiction.

### Count VII- Punitive Damages

### Plaintiff v. Defendants

97.     Plaintiff incorporates each and every allegation above as if set forth at length herein.

98.     Plaintiff also alleges that each act of negligence by all of the defendants described above
        and/or any one of them individually and/or any combination of them constituted individual

and/or collective acts of willful, intentional, reckless, and wanton acts of negligence against plaintiff.

99.     These actions include: (1) designing, manufacturing and placing into the stream of commerce Children's Motrin which was unsafe for the purpose intended; (2) failing to adequately warn the ultimate user and consumer and/or their healthcare providers of the inherent dangers of Children's Motrin; (3) failing to provide instructions for the safe use of said dangerous drug when defendants knew or should have known of the probable harm, injury or death the drug could cause to the user; (4) deliberately failing to warn about the danger of these potentially severe adverse reactions; (5) failing to properly test Children's Motrin; and (6) failing to properly and/or accurately report to certain groups, including but not limited to the medical community, healthcare providers, and/or consumers, including the plaintiff, the results and instances of individuals suffering from these severe adverse reactions as a result of ingesting Children's Motrin.

100.    Defendants also failed to adequately test Children's Motrin for down classification from prescription to over-the-counter use with children before marketing, promoting, selling, and/or distributing it to the medical community, healthcare providers, and/or consumers, including the plaintiff.

101.    Further, defendants knew or should have known that there was a high degree of risk of harm from EM, SJS TEN, and/or VBDS for children ingesting Children's Motrin due to its chemical components.   The defendants, manufactured and sold Children's Motrin in conscious disregard of the health, safety, and well-being of its consumers, including the plaintiff, which constitutes gross negligence.

102.    Additionally, Defendants knew or should have know that there was a high degree of risk of

harm from EM, SJS, TEN, and/or VBDS for children ingesting Children's Motrin, yet the

Defendants willfully, intentionally, and/or recklessly deleted from the drug's prior warnings

and/or deleted from its list of warnings, certain risks known to Defendants, including, but

not limited to, EM, SJS, TEN, and/or VBDS; thereby withdrawing the warning of such risks

from certain groups, including but not limited to the medical community, healthcare

providers, and/or consumers, including the plaintiff.

103.    For these reasons, defendants should be held liable and punished for their willful, intentional,

reckless, and wanton acts.

WHEREFORE, plaintiff demands punitive damages in an amount which will appropriately

penalize Defendants for their intentional, reckless, willful, and wanton acts.


### DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury of all issues so triable.


_____
Joseph L. Messa, Jr., Esquire
Brian P. Kelly, Esquire
MESSA & ASSOCIATES, P.C.
123 South 22nd Street
Philadelphia, PA 19103
Telephone: (215) 568-3500
Facsimile: (215) 568-3501
jmessa@messalaw.com
bkelly@messalaw.com

and

_____
Darryl J. Tschirn, Esquire
LAW OFFICES OF DARRYL J. TSCHIRN
7825 Fay Avenue, Suite 200
La Jolla, CA 92037
Telephone: (858) 454-9927
Facsimile: (858) 454-0980
Tschirnlaw@sbcglobal.net

     and

_____
John M. Robin
LAW OFFICES OF JOHN M. ROBIN
600 Covington Center
P.O. Box 1830
Covington, LA 70434–1830
Telephone: (985) 835-0370
Facsimile: (985) 893-2511
jmraplc@bellsouth.net