IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KILEY WOLFE** | : | CIVIL ACTION |
| Plaintiff, | : | |
| v. | : | NO. 07-348 |
| MCNEIL-PPC, INC.; MCNEIL CONSUMER & SPECIALTY PHARMACEUTICALS, a divison of MCNEIL-PPC, INC.; MCNEIL CONSUMER HEALTHCARE, a divison of MCNEIL PPC, INC.; JOHNSON & JOHNSON, INC.; and JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH AND DEVELOPMENT, LLC; | : | |
| Defendants. | : | |

DuBOIS, J.  July 30, 2010

**M E M O R A N D U M**

**I. INTRODUCTION**

This is a products liability action in which plaintiff, Kiley Wolfe, alleges that the Children's Motrin manufactured and marketed by defendants caused her to develop Stevens-Johnson Syndrome and Vanishing Bile Duct Syndrome. The Court's Third Amended Scheduling Order of March 30, 2009, directed the parties to file and serve memoranda of law addressing their respective positions on the choice of law issues in the case. After reviewing those memoranda and the relevant material submitted by the parties, the Court concludes that Pennsylvania law is applicable to Counts One through Six of the Complaint and that Maine law will be applied to Count Seven and the affirmative

defense of comparative negligence.

## II. BACKGROUND

Kiley Wolfe contracted a virus while living with her parents in Bath, Maine during the Spring and Summer of 1996, when she was nine years old. (Compl. ¶¶ 2, 21, 22.) Sometime around May 27, 1996, Wolfe's parents took her to see a pediatrician in Maine. The pediatrician prescribed Children's Motrin to help relieve Wolfe's symptoms, which included headache, stomach pains, and a fever. (Compl. ¶21, 22). Children's Motrin is an over-the-counter non-steroidal anti-inflammatory analgesic drug, generically referred to as ibuprofen, manufactured and marketed by defendants. (Compl. ¶ 12.)

Despite taking the Children's Motrin, Wolfe's symptoms did not improve. Instead, a rash formed on her face and she was again taken to see her Maine pediatrician, who continued to prescribe Children's Motrin (Compl. ¶ 24, 25). Thereafter, hundreds of tiny blisters appeared on Wolfe's face, ears and throat. (Compl. ¶ 27.) Sometime after June 1, 1996, Wolfe was taken to Boston Children's Hospital by her mother, where she was diagnosed with Stevens-Johnson Syndrome, which led to the development of Acute Vanishing Bile Duct Syndrome. (Compl. ¶¶ 28, 29, 30). Since this diagnosis, Wolfe has been treated at locations in Ohio, Florida, and Louisiana, the state where she currently resides.

Each of the defendants is alleged to be involved in the design, testing, manufacturing, marketing and selling of Children's Motrin. McNeil-PPC is New Jersey Corporation with its principal place of business in New Jersey; McNeil Consumer Healthcare[1] is an unincorporated division of McNeil-PPC with a headquarters in Fort Washington, Pennsylvania; Johnson & Johnson,

---

[1] McNeil Consumer Healthcare was formerly known as McNeil Consumer & Speciality Pharmaceuticals Division of McNeil-PPC.

Inc. is the parent company of Johnson & Johnson Pharmaceutical Research and Development and the parent company of McNeil-PPC and McNeil Consumer Healthcare. The Johnson & Johnson companies are both New Jersey corporations with principal places of business in New Jersey.

Plaintiff's Complaint contains seven counts: (1) negligence, (2) strict liability under Restatement (Second) of Torts § 402A, (3) strict liability under Restatement (Second) of Torts § 402B, (4) breach of express warranty, (5) breach of implied warranty of merchantability, (6) violation of consumer protection law, and (7) punitive damages. Plaintiff avers that the conduct for which it seeks to hold defendants liable took place at McNeil Consumer Healthcare's headquarters in Fort Washington, Pennsylvania.

## III. DISCUSSION

Plaintiff and defendants agree that the first five counts of the Complaint do not present any true conflicts of law. Thus, applying Pennsylvania choice of law rules, Pennsylvania law will be applied to those counts of the Complaint. See Hammersmith v. TIG Ins. Co., 480 F.3d 220, 226-27 (3d Cir. 2007) (noting that a deep choice of law analysis is only necessary under Pennsylvania choice of law rules if there is a true conflict) (citing Cipolla v. Shaposka, 267 A.2d 854, 856 (1970)).

With respect to Count Six, the consumer protection law claim, the parties agree that, although there is a true conflict between the consumer protection laws of Maine and Pennsylvania, Pennsylvania law should be applied. Accordingly, the Court need not conduct a choice-of-law analysis regarding Count Six. See Health Robotics, LLC v. Bennett, No. 09-627, 2009 WL 5033966, at *2 n.2 (E.D. Pa. Dec. 22, 2009). Pennsylvania law will be applied to Count Six.

The clash in this case concerns Count Seven—the punitive damages claim—and defendant's affirmative defense of comparative negligence. The parties dispute whether there is a true conflict

between the laws of Pennsylvania and Maine and, if so, which jurisdiction has the greater interest in having its laws applied. The Court addresses each of these issues in turn.

### A. Principles Governing Choice of Law Analysis in Pennsylvania

Federal courts exercising diversity jurisdiction must apply the conflict of law rules of the forum state. On Air Entm't Corp. v. Nat'l Indem. Co., 210 F.3d 146, 149 (3d Cir. 2000) (citing Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496-97 (1941)). Therefore, Pennsylvania choice of law rules apply to this case.

Pennsylvania applies "interest/contacts" methodology to choice-of-law questions. See Hammersmith, 480 F.3d at 226-27. This is a "flexible choice of law rule which weighs the interests [its] sister-states may have in the transaction." Powers v. Lycoming Engines, 328 F. App'x 121, 124 (3d Cir. 2009) (quoting Commonwealth v. Eichinger, 915 A.2d 1122, 1133 (Pa. 2007)). Pennsylvania's choice-of-law analysis requires the Court to conduct a two-part inquiry: "The first level of scrutiny considers whether 'an actual or real conflict [exists] between the potentially applicable laws.'" Powers, 328 F. App'x at 125 (quoting Hammersmith, 480 F.3d at 230) (brackets added in Powers). "If there are relevant differences between the laws, then the court should examine the governmental policies underlying each law, and classify the conflict as a 'true,' 'false,' or an 'unprovided-for' situation.'" Hammersmith, 480 F.3d at 230.

Whether a conflict is true or false depends on each jurisdiction's interest in having its law applied. If "only one jurisdiction's governmental interests would be impaired by the application of the other jurisdiction's law," then the conflict is a false one and "the court must apply the law of the state whose interests would be harmed if its law were not applied." Lacey v. Cessna Aircraft Co., 932 F.2d 170, 187 (3d Cir. 1990). If both jurisdiction's governmental interests would be impaired

by the application of the other jurisdiction's law, then a "true" conflict exists. Hammersmith, 480 F.3d at 230 (citing Cipolla v. Shaposka, 267 A.2d 854, 856 (Pa. 1970)). In this situation, a deeper level of analysis is necessary. "[T]he Court must then determine which state has the 'greater interest in the application of its law.'" Hammersmith, 480 F.3d at 231 (quoting Cipolla, 267 A.2d at 856). To determine the significance of a state's interests, courts assess the "contacts each state has with the accident, the contacts being relevant only if they relate to the 'policies and interests underlying the particular issue before the court.'" Cipolla, 267 A.2d at 856 (quoting Griffith v. United Air Lines, Inc., 203 A.2d 796, 805 (Pa. 1964)).

Choice of law analysis is issue specific. This means that in some cases, different states' laws may apply to different issues in a single case, a principle known as "depecage." Berg Chilling Sys., Inc. v. Hull Corp., 435 F.3d 455, 462 (3d Cir. 2006). Although no Pennsylvania court has explicitly addressed the doctrine of depecage, the Third Circuit has predicted that the courts of Pennsylvania would apply it in appropriate cases. See Taylor v. Mooney Aircraft Corp., 265 F. App'x 87, 91 (3d Cir. 2008) (citing Griffith v. United Air Lines, Inc., 203 A.2d 796, 805 (Pa. 1964).

**B. Conflict of Law Regarding Count Seven – Punitive Damages**

The laws of Pennsylvania and Maine governing punitive damages differ in two respects. The first difference pertains to the defendant's state of mind. In Pennsylvania, "[p]unitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others." Hutchison v. Luddy, 870 A.2d 766, 770 (Pa. 2005) (referencing Restatement (Second) of Torts § 908). In Maine, by contrast, punitive damages may not awarded for reckless indifference. Instead, punitive damages may be awarded only upon a showing that the defendant acted with express or implied "malice," which exists "where the

defendant's tortious conduct is motivated by ill will toward the plaintiff." Tuttle v. Raymond, 494 A.2d 1353, 1361 (Me. 1985). The second difference relates to the burden of proof. In Pennsylvania, punitive damages must be proven only by a preponderance of the evidence. See Martin v. Johns-Manville Corp., 494 A.2d 1088, 1098 (Pa. 1985), *abrogated on other grounds by* Kirkbride v. Lisbon Contractors, Inc., 555 A.2d 800 (Pa. 1989). In Maine, they must be proven by clear and convincing evidence. Tuttle, 494 A.2d at 1363.

Given the real differences between the law governing punitive damages in Pennsylvania and Maine, the Court must determine whether the conflict is true or false. Plaintiff argues that the conflict is false because Maine has no interest in protecting out-of-state pharmaceutical firms with a heightened punitive damages standard. Pennsylvania, on the other hand, has a substantial interest in regulating businesses – like McNeil Consumer Healthcare – that operate within its borders. Defendant counters that Maine has several interests in having its law applied, among them the desire to encourage economic activity in the state, lower prices to consumers, and to regulate the sale and use of pharmaceutical products by Maine citizens – like Kiley Wolfe at the time she used Children's Motrin – within the borders of Maine.

The Court concludes that there is a true conflict between the laws of Pennsylvania and Maine. Pennsylvania undoubtedly has an interest in punishing and deterring the recklessness of businesses operating within its borders, while Maine has a substantial interest in regulating the sale and use of drugs within its borders. Because a true conflicts exists, the Court must apply the law of the state having the most qualitatively significant contacts or relationships with the use of Children's Motrin in this case. "What should be sought is an analysis of the extent to which one state rather than another has demonstrated, by reason of its polices and their connection and relevance to the matter

in dispute, a priority of interest in the application of its rule of law." Norman v. Johns-Manville Corp., 593 A.2d 890, 893 (Pa. Super. Ct. 1991). Among the contacts considered are (1) the place of injury, (2) the place where the conduct causing the injury occurred, (3) the domicile, residence, place of incorporation or place of business of the parties, and (4) the place where the relationship between the parties occurred. Laconis v. Burlingon County Bride Commission, 583 A.2d 1218, 1222-23 (Pa. Super. Ct. 1990).

In this case, Pennsylvania and Maine each have significant contacts. Pennsylvania is the place where the Children's Motrin is manufactured. Plaintiff also alleges that Pennsylvania is where the defendants tested, marketed, devised warnings and met to discuss these actions. McNeil Consumer Healthcare, however, is not a Pennsylvania corporation. It is merely an unincorporated division of a New Jersey corporation with a principal place of business in New Jersey – McNeil PPC – that is itself part of an even larger corporation – Johnson & Johnson, Inc. – that is also a New Jersey corporation with a principal place of business in New Jersey. Plaintiff has no direct ties to Pennsylvania. Maine, on the other hand, is the place where, allegedly, the injury initially occurred, the place where defendant sold and plaintiff purchased the Children's Motrin that caused plaintiff's injury, the place where defendants representations caused plaintiff's doctor to recommend Children's Motrin, the place where its representations caused plaintiff to follow her doctor's recommendation, and the place where plaintiff lived at the time of her injury. On these facts, the Court concludes that Maine has a greater interest in having its law applied. Maine, as the place where the drugs were prescribed and taken by one of its citizens, has a strong interest in applying its law to conduct that allegedly caused an injury in its borders. Cf. In re Diet Drugs, No. 98029626, 1999 WL 673066, at *15 (E.D. Pa. 1999) (explaining that "the jurisdictions in which each class member was

prescribed and ingested the Diet Drugs have a strong interest in applying their applicable law to the sale, prescriptions and ingestion of pharmaceuticals within its borders, which is the conduct that gave rise to the class members' claims").

The Court's conclusion is buttressed by the similar result in Bearden v. Wyeth, 482 F. Supp. 2d 614 (E.D. Pa. 2006). In that case a resident of the state of Arkansas experienced a reaction and committed suicide after being prescribed and having taken the drug Effexor as part of an ongoing treatment for depression, all within the state of Arkansas. Id. at 620. Plaintiff brought suit against the manufacturers of the drug— Wyeth and Wyeth Pharmaceuticals — alleging that it caused the decedent to commit suicide. Id. Both Wyeth and Wyeth Pharmaceuticals were Delaware corporations with principal places of business in New Jersey. Id. However, Wyeth Pharmaceuticals maintained a divisional headquarters in Pennsylvania where, plaintiff alleged, it researched and developed Effexor and where it made its representations, warnings and warranties concerning the drug. Id. Applying Pennsylvania choice-of-law rules to decide whether the law of Pennsylvania or Arkansas would apply, the court determined that "Arkansas has a greater interest in applying its laws to protect and provide redress for a citizen who was prescribed a drug, received any relevant representations or warnings about it, purchased it, ingested it, and was injured by it – all within his home state of Arkansas." Id. at 622. The same is true of this case.

For all of the reasons stated above, the Court concludes that there is a true conflict between the laws of Pennsylvania and Maine regarding punitive damages and that, because Maine has the greater interest in having its laws applied, Maine law will be applied to plaintiff's claim for punitive damages.

### C. Conflict of Law Regarding the Affirmative Defense of Comparative Negligence

In Maine, a plaintiff may recover only if she is less than fifty percent at fault. Me. Rev. Stat. Ann., tit. 14, § 156. In Pennsylvania, a plaintiff may recover if she is fifty percent or less at fault. 42 Pa. Cons. Stat. Ann. § 7102. The laws of the two states regarding comparative negligence also differ in another significant way: In Maine, comparative negligence—"of a form commonly passing under the name assumption of the risk, consisting in voluntarily and unreasonably proceeding to encounter a known danger"—is a defense to a products liability claim, Austin v. Raybestos-Manhattan, Inc., 471 A.2d 280, 286 (Me. 1984); but in Pennsylvania, comparative negligence cannot be asserted as a defense to a products liability action premised on §402A of the Restatement (Second) of Torts. See Kimco Development Corp. v. Michael D's Carpet Outlets, 637 A.2d 603, 607 (Pa. 1993).

For the same reasons articulated in section I(B) of this Memorandum, the real differences in the laws of Pennsylvania and Maine regarding comparative negligence present a true conflict of law. And, also for the same reasons stated in section I(B), Maine has a greater interest in having its law applied. Accordingly, Maine law will be applied to defendants' affirmative defense of comparative negligence.

### IV. CONCLUSION

The parties agree that Pennsylvania law should apply to the first six counts of the Complaint. Applying the doctrine of depecage, the Court concludes, for the foregoing reasons, that the laws of Pennsylvania will be applied to Counts One through Six, but Maine law will govern Count Seven—the claim for punitive damages—and defendants' affirmative defense of comparative negligence.

BY THE COURT:

/s/ Jan E. DuBois
**JAN E. DUBOIS, J.**